UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA J. HENDERSON,

    Plaintiff,

v.    Case No. 07-10199
    Honorable Patrick J. Duggan

JOHN E. POTTER, Postmaster General,

    Defendant.
_____/

# OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 6, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

Plaintiff filed this lawsuit after she left her employment with the United States Postal Service (USPS), claiming that she was subjected to a hostile work environment on account of her age and race[1] beginning in June 2001, which culminated in her constructive discharge in March 2003. Plaintiff brings her lawsuit pursuant to Title VII

---

[1] In the complaint she filed with the United States Equal Employment Opportunity Office, Plaintiff also alleged sex discrimination. In her complaint in the pending matter, Plaintiff does not allege sex discrimination; however, in response to Defendant's motion for summary, she titles one section as follows: "Intentional age, race, and *sex* discrimination were established by the evidence." (Pl.'s Resp. Br. at 17 (emphasis added).) In her response brief, Plaintiff also identifies one instance where she believes she was treated differently than a male employee. (*Id*. at 8.) To the extent Plaintiff is alleging sex discrimination or a hostile work environment based on sex, her claims fail for the same reason her claims based on age and race fail. *See infra*.

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-16(c), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, filed August 20, 2007. The motion has been fully briefed and, on November 1, 2007, this Court held a motion hearing. For the reasons that follow, the Court grants summary judgment to Defendant.

## I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient

evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## II.     Factual Background

Plaintiff is an African-American female, born on December 26, 1949. She began working for the USPS in 1968, resigned in 1990, and was rehired in 1993 to work at the post office in Royal Oak, Michigan.

In November 2000, Plaintiff was selected as a Supervisor of Customer Services at the Madison Heights Annex to the Royal Oak Post Office. In this position, Plaintiff reported to Jeffrey Helmuth, Branch Manager of the Madison Heights Annex, and Lisa Simon, the Lead Supervisor at Royal Oak. Mr. Helmuth was on the panel that recommended Plaintiff's selection as Supervisor of Customer Services. Robert Lauinger, a Caucasian male born in November 1962, was hired at the same time as a second Supervisor of Customer Services.

According to Plaintiff, Mr. Helmuth was the sole perpetrator of the race and age discrimination and harassment she allegedly endured. (Def.'s Mot. Ex. 2 ¶ 8; Ex. 3 at 30-31; Ex. 6 at 1-2.) In her response to Defendant's motion, Plaintiff identifies a number of instances where she believes Mr. Helmuth discriminated against her based on her age and

3

race.² First, Plaintiff claims that in May and June 2001, Mr. Helmuth accused her of showing favoritism toward African-American employees, apparently in placing employees in certain jobs. (Pl.'s Resp. Br. at 7.) Plaintiff asserts that the allegations were not true. Next, Plaintiff asserts that after she became lead supervisor in June 2001, Mr. Helmuth did not meet with her formally until July 27, 2001. (*Id*.) Third, Plaintiff claims that Mr. Helmuth "added age to the consideration of race in the workplace treatment of Plaintiff when he engaged in an unsolicited questioning of [Plaintiff] regarding why she continued to work [at the post office], and when would she be able to retire." (*Id*. at 7-8.) For other examples of Mr. Helmuth's "multiple acts of harassment leading to a hostile work environment," Plaintiff refers to a twenty-three page "letter of [c]omplaint" that she wrote on November 27, 2001.³ (*Id*. at 8, citing Ex. 2.)

---

²In her complaint, Plaintiff only alleges the following as examples of the harassment she endured:

a. Feeding information and assistance to a labor union to further the harassment of Plaintiff;
b. Supervisory comments related to the race;
c. Supervisory interrogation of Plaintiff regarding retirement;
d. Other harassment.

(Compl. ¶ 13.)

³The Court questions whether this letter even is admissible as evidence of a genuine issue of material fact. In any event, while the letter outlines various grievances by Plaintiff– most of which do not even relate to Mr. Helmuth's conduct– she offers no evidence in the letter to suggest that the conduct of which she complains was based on her race or age.

From late August to mid-September 2001, Plaintiff was on sick leave. When she returned to work, the Postmaster of the Royal Oak Post Office, David Bondy, transferred her to a Supervisor of Customer Services position at the Royal Oak Post Office. Postmaster Bondy transferred Mr. Lauinger to the Royal Oak Post Office at the same time. Mr. Helmuth remained as Plaintiff's supervisor during this time.

On October 26, 2001, Plaintiff asked Mr. Helmuth and Ms. Simon to attend a meeting that Plaintiff had scheduled with letter carrier Greg Beckman and NALC (National Association of Letter Carriers) steward Mike Lindley to discuss Mr. Beckman's unauthorized use of overtime. During the meeting, Mr. Beckman exhibited paranoid behavior, claiming that someone was following and watching him on his mail route. Mr. Helmuth asked Mr. Beckman questions regarding his perceptions. (Def.'s Mot. Ex. 3 at 133.)

Plaintiff testified during the EEOC hearing that, after letting Mr. Helmuth and Mr. Beckman talk for 30-45 minutes about the latter's perceptions of being followed, she felt that the reason Mr. Beckman had been brought into the meeting should be discussed. (*Id*. at 134.) She therefore began asking Mr. Beckman questions about his overtime usage. (*Id*.) Those attending the meeting thought that Plaintiff was bullying Mr. Beckman. Mr. Helmuth attempted to stop Plaintiff from questioning Mr. Beckman. When she continued, he abruptly ended the meeting and excused Mr. Beckman and Mr. Lindley. After Mr. Beckman and Mr. Lindley left the room, but before the door of the room was closed, Mr. Helmuth began yelling at Plaintiff regarding the way she had spoken to Mr.

5

Beckman. (*Id*. at 46.) Plaintiff was very upset after the meeting.

Between late October 2001 through January 2002, Plaintiff worked only eleven days. She claims that she was off work due to stress on the job as a result of Mr. Helmuth's harassment and because her husband had surgery. When Plaintiff returned to work in February 2002, she informed Postmaster Bondy that she did not want to work with Mr. Helmuth anymore. The Postmaster initially reassigned Plaintiff to training rather than supervisory duties. In March 2002, however, Postmaster Bondy informed Plaintiff that a Supervisor of Customer Services position had become available at the Bloomfield Hills Post Office, to which she could temporarily transfer. Plaintiff accepted the transfer and the transfer subsequently became permanent in September 2002. In her new position, Plaintiff reported to the Bloomfield Hills Postmaster, Don Hall, and Chris Oxie, the office's Lead Supervisor. Mr. Helmuth no longer was in Plaintiff's supervisory chain of command.

In June 2002, two branches of the NALC met pursuant to a request by Lee Dibble, a NALC steward at the Bloomfield Hills Post Office. The following individuals were present at the meeting: Ms. Dibble; Dave DeGroat, NALC Branch President, Bloomfield Hills; Charlie Withers, Chief Steward, Royal Oak; Mr. Oxie; and Mr. Helmuth. Ms. Dibble called the meeting because the NALC branch at Bloomfield Hills wanted to obtain information regarding Plaintiff as a supervisor when she was at Royal Oak. This apparently is the usual process by which the union requests information about supervisors who move from other post offices; and if the request for information is denied, the union

can file a grievance. (Def.'s Mot. Ex. 2 at 165.) During the meeting, the union stewards from Bloomfield Hills presented a list of questions regarding Plaintiff to the stewards from Royal Oak and the stewards talked back and forth; Mr. Oxie and Mr. Helmuth did not say anything during the meeting. (*Id*. at 335, 342-43.)

In June 2002, Plaintiff started looking for another job and she ultimately received a position with the State of Michigan. On March 7, 2003, Plaintiff submitted a resignation form to the USPS, stating that she was resigning because she had accepted a position with another governmental agency. Plaintiff contends that she actually decided to resign because she believed after the June 2002 meeting that her ability to supervise the Bloomfield Hills work force had been compromised:

> Because I felt harassed. I felt I was no longer able to complete my job to do it effectively, because once I was transferred, after I was at Bloomfield the harassment from the union continued and there were changes that took effect that made it impossible. I felt . . . that it was impossible for me to do my job effectively.

(Pl.'s Resp. Br. at 13.) In other words, Plaintiff asserts that she was constructively discharged due to harassment.

### III. Applicable Law and Analysis

Plaintiff alleges that she was subjected to a hostile work environment which eventually led to her constructive discharge. In order to establish a prima facie case of hostile work environment based on either race or age, Plaintiff must establish the following: (1) she is a member of a protected class; (2) she was subjected to unwelcome

7

harassment; (3) the harassment was based on race or age; (4) the harassment had the effect of unreasonably interfering with Plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) there exists some basis for liability on the part of the employer. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Crawford*, 96 F.3d at 834-35. An employer can be liable under Title VII and the ADEA for constructive discharge where the plaintiff shows "working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suder*, 542 U.S. 129, 147, 124 S. Ct. 2342, 2354 (2004). The harassment must be "severe and pervasive." *Id*. at 146, 124 S. Ct. at 2354 (quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986)).

Plaintiff has not established a prima facie case to support her hostile work environment claim. Plaintiff identifies only one incident possibly related to her race or age– that being Mr. Helmuth's inquiry of Plaintiff at a June 2001 meeting: "Can't you retire?" When considered in its context, however, the simple inquiry as to whether Plaintiff could retire objectively was not "harassment" and did not reflect an animus against older workers. At the time, Plaintiff was in a meeting with Mr. Helmuth and Ms. Simon to discuss an employee's complaints about Plaintiff. Specifically, as Plaintiff testified at the EEOC hearing, she, Mr. Helmuth, and Ms. Simon met to discuss a rumor concerning an employee's claim that Plaintiff told one employee that another employee was filing an EEOC complaint against the first employee. (Def.'s Mot. Ex. 3 at 50.) Mr.

8

Helmuth then asked Plaintiff: ". . . why do you put up with this crap? "Can't you retire?" (*Id.*)  Even if this incident did constitute age-based harassment, it is the only incident in Plaintiff's complaint and her response to Defendant's motion that Plaintiff identifies as having anything to do with her age or race.

While Plaintiff sets forth a few instances where she felt that Mr. Helmuth improperly criticized her or undermined her supervisory authority, Plaintiff offers absolutely no evidence to suggest that Mr. Helmuth's conduct was related to her age or race.  The fact that a supervisor may be rude, arrogant, mean, or difficult to please does not establish a hostile work environment.  As the Seventh Circuit aptly explained:

> [Title VII] does not guarantee a utopian workplace, or even a pleasant one.  If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated.  In short, personality conflicts between employees are not the business of the federal courts.

*Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994).  In other words even severe or pervasive harassment by a supervisor does not establish a claim under Title VII or the ADEA unless the harassment is based on the plaintiff's membership in a protected class.

As Plaintiff fails to establish that she was subjected to a hostile work environment based on her race or age, she also cannot succeed on her constructive discharge claim.  Moreover, Plaintiff's statements in her response brief suggest that her decision to retire stemmed from the harassment she suffered from the union and its employees who she

9

supervised, not Mr. Helmuth's conduct. (Pl.'s Resp. Br. at 12-13.) There is no evidence that this harassment was related to Plaintiff's race or age. In fact, it appears from testimony at the administrative hearing that the harassment of which Plaintiff complains was not unique to Plaintiff; rather it was something encountered by most Post Office managers as a result of NALC's dislike of management. (Def.'s Mot. Ex. 3 at 268-71.)

For the above reasons,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Chui Karega, Esq.
AUSA William L. Woodward